Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:   516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK DIEBOLT,<br><br>                      Plaintiff,<br><br>vs.<br><br>F-STAR THERAPEUTICS, INC., NESSAN BERMINGHAM, DAVID ARKOWITZ, EDWARD BENZ, JR., J. TODD BRADY, ELIOT FORSTER, PAMELA KLEIN, PATRICK KROL, and GEOFF RACE,<br><br>                      Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Mark Diebolt ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against F-star Therapeutics, Inc. ("F-star" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

- 1 -

result of Defendants' efforts to sell the Company to InvoX Pharma Limited ("Parent" or "InvoX") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a June 23, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, InvoX will acquire all the outstanding shares of F-star common stock for $7.12 per share in cash. As a result, F-star will become an indirect wholly-owned subsidiary of InvoX.

3. Thereafter, on July 7, 2022, F-Star filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to InvoX.

5. Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their F-Star shares in favor of the Proposed Transaction. The Recommendation

Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for F-Star, provided by F-Star to the Company's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Morgan Stanley and provided to the Company and the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

9. Plaintiff is a citizen of Connecticut and, at all times relevant hereto, has been a F-star stockholder.

10. Defendant F-star is a clinical-stage biopharmaceutical company that develops tetravalent bispecific antibodies for cancer therapy. F-star is incorporated in Delaware and has its principal place of business at Babraham Research Campus, Cambridge, CB22 3AT, United Kingdom. Shares of F-star common stock are traded on the NasdaqCM Stock Exchange under the symbol "FSTX".

11. Defendant Nessan Bermingham ("Bermingham") has been a Director of the Company at all relevant times.

12. Defendant David Arkowitz ("Hibberd") has been a director of the Company at all relevant times.

13. Defendant Edward Benz, Jr. ("Benz") has been a director of the Company at all relevant times.

14. Defendant J. Todd Brady ("Brady") has been a director of the Company at all relevant times.

15. Defendant Eliot Forster ("Forster") has been a director of the Company at all relevant times.  In addition, Forster serves as the Company's Chief Executive Officer ("CEO").

16. Defendant Pamela Klein ("Klein") has been a director of the Company at all relevant times.

17. Defendant Patrick Krol ("Krol") has been a director of the Company at all relevant times.

18. Defendant Geoff Race ("Race") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20. Non-Party InvoX is a globally recognized, fully integrated pharmaceutical company with an advancing pipeline of innovative products addressing unmet healthcare needs.

21. Non-Party Fennec Acquisition Incorporated is a wholly owned subsidiary of InvoX created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25. F-star Therapeutics, Inc. is a clinical-stage biopharmaceutical company that develops tetravalent bispecific antibodies for cancer therapy. Its medicines are used in immuno-oncology treatments. The company's principal product candidate is FS118 and is being evaluated in a proof-of-concept Phase 2 trial in PD-1/PD-L1 acquired resistance head and neck cancer patients. It is also developing first-in-human clinical study of FS222, a bispecific antibody that is in Phase 1 clinical trial targeting the costimulatory CD137 receptor and the inhibitory PD-L1 ligand. In addition, the company is also evaluating FS120 and SB 11285 for patients with advanced

cancers, which are under Phase 1 clinical trials. F-star Therapeutics, Inc. was incorporated in 2002 and is headquartered in Cambridge, the United Kingdom.

26. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the May 10, 2022 press release announcing its 2022 Q1 financial results, the Company reported that they anticipate four Clinical Readouts throughout 2022 and that cash and cash equivalents totaled $68.8 million as of March 31, 2022.

27. Speaking on the results, CEO Defendant Forster said, "This year is one of the most important years in F-star's history, with data readouts expected across all four of our clinical programs, expansion of our partnering activities, and continued development of our organization," ….. "During the quarter, we increased the number of clinical sites for FS118 and FS120 by expanding beyond the US into the EU. We have also further advanced our understanding of the differentiated mechanism of FS118 in modulating LAG-3 cell surface expression. F-star continues to execute and create value for shareholders by advancing our programs and enabling our partners to develop next-generation bispecific therapeutics by leveraging the power of our discovery platform."

28. The promising financial results are not an anomaly, but rather, are indicative of a trend of continued future potential success by F-star. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

29. Despite this upward trajectory, the Individual Defendants have caused F-star to enter into the Proposed Transaction without providing requisite information to F-star stockholders such as Plaintiff.

*The Flawed Sales Process*

30. The Recommendation is materially deficient. The Recommendation Sheet fails to disclose whether a committee of disinterested directors was appointed to run the sale process, and if so, the specific powers that committee had in evaluating a potential transaction.

31. In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including InvoX, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including InvoX, throughout the sales process, if any, would fall away.

32. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

33. On June 23, 2021, F-star issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **London, June 23, 2022 – invoX Pharma ("invoX"),** a wholly owned subsidiary of Sino Biopharmaceutical Limited ("Sino Biopharm") (HKEX 1177 HK), focused on research and development (R&D) and business development activities outside of China, and **F-star Therapeutics, Inc. ("F-star")** (NASDAQ:FSTX), a clinical-stage biopharmaceutical company pioneering bispecifics in immunotherapy so more people with cancer can live longer and improved lives, today announced that the companies have entered into a definitive agreement whereby invoX will acquire all of the issued and outstanding shares of F-star common stock for $7.12 per share. The proposed acquisition values F-star at approximately $161 million. The transaction has been unanimously approved by the invoX and F-star Boards of Directors and is expected to close in the second half of 2022.
>
> F-star's proprietary platform technology pioneers the use of tetravalent (2+2) bispecific antibodies that enable the simultaneous targeting of two different

antigens and a unique set of pharmacology to deliver focused, potent and safe immune activation in the tumor microenvironment. Four programs are progressing in clinic, three based on F-star's tetravalent platform and one next generation STING agonist, with multiple further undisclosed programs in development. These programs represent potentially first- and best-in-class drug candidates for many areas of unmet medical need, including patients with cancer and other serious diseases who have few other options available. Leveraging its modular antibody technology, F-star has forged collaborations with major international biopharma companies across a wide range of therapeutic areas including oncology, immunology and neurology.

invoX, established in 2021 in the United Kingdom, is Sino Biopharm's international expansion platform, focusing on R&D and business development activities outside of China, with a core focus on oncology and respiratory therapeutics. F-star will form a key element of invoX's strategy to accelerate Sino Biopharm's development of innovative medicines to transform the lives of patients worldwide, complementing its existing R&D platforms and pipeline.

**Ben Toogood, Chief Executive Officer of invoX commented**: "Today's proposed acquisition is aligned with invoX's strategy to become a fully integrated biopharmaceutical company with an advancing pipeline of innovative products addressing unmet healthcare needs, worldwide. We are excited to welcome F-star employees and look forward to working with them as we invest in the company to progress and grow its clinical pipeline to realize the full potential of the platform."

Eliot Forster, Chief Executive Officer of F-star said: "We believe our tetravalent bispecifics offer the best approach to tackle hard-to-treat cancers and other serious diseases, with the ambition to deliver longer and improved lives for patients. Today's announcement is good news for F-star, for our shareholders and, of course, for patients. This transaction enables greater and longer-term opportunities to develop the F-star platform and accelerate delivery of our novel medicines as we work together towards a future free from cancer and other serious diseases. I'd like to thank the fantastic team at F-star as well as our partners for all their hard work, support and dedication and I'm delighted to share this exciting development."

**Transaction Terms**

Under the terms of the merger agreement, invoX, a wholly owned subsidiary of Sino Biopharm, will commence a tender offer within the next 10 business days to acquire all of the issued and outstanding shares of F-star common stock for a price of US$7.12 per share in cash upon the completion of the offer. The transaction is expected to complete in the second half of 2022, subject to certain customary closing conditions, including the tender by F-star stockholders of greater than 50 percent of the issued and outstanding shares of F-star common stock and required regulatory approvals, including the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and other customary closing

conditions. Following the closing of the tender offer, invoX will acquire any shares of F-star that are not tendered in the tender through a second-step merger under Delaware law at the tender offer price.

*Potential Conflicts of Interest*

34. The breakdown of the benefits of the deal indicates that F-Star insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of F-Star.

35. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, the Recommendation Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| Name | Amount and Nature of Beneficial Ownership [1] | Consideration Payable in Respect of Company Shares |
|---|---:|---:|
| **Executive Officers** | | |
| Eliot Forster, Ph.D. | 257,973 | $ 1,495,511 |
| Darlene Deptula-Hicks | 59,243 | $ 186,516 |
| Louis Kayitalire, M.D. | 49,056 | $ 161,368 |
| Neil Brewis, Ph.D., DSc. | 79,596 | $ 504,644 |
| **Non-Employee Directors** | | |
| Nessan Bermingham, Ph.D. | 150,253 | $ 689,331 |
| David Arkowitz | 20,000 | $ 4,800 |
| Todd Brady, M.D., Ph.D. | 20,000 | $ 4,800 |
| Pamela Klein, M.D. | 20,000 | $ 4,800 |
| Edward Benz Jr., M.D. | 28,322 | $ 36,021 |
| Geoffrey Race | 23,937 | $ 32,481 |

36. Notably, Company insiders, currently own large, illiquid portions of Company stock, stock option, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name | Number of Vested Company Stock Options | Value of Vested Company Stock Options | Number of Unvested Company Stock Options | Value of Unvested Company Stock Options | Total Value of Vested and Unvested |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| Eliot Forster, Ph.D. (1) | 200,958 | $ 1,089,564 | 479,880 | $ 1,578,156 | $ 2,667,720 |
| Darlene Deptula-Hicks (1) | 33,047 | $ — | 105,998 | $ 229,484 | $ 229,484 |
| Louis Kayitalire, M.D. (1) | 26,392 | $ — | 103,130 | $ 253,557 | $ 253,557 |
| Neil Brewis, Ph.D., DSc. | 51,246 | $ 302,792 | 254,666 | $ 880,973 | $ 1,183,765 |
| **Non-Employee Directors** | | | | | |
| Nessan Bermingham, Ph.D. | 54,111 | $ 4,800 | 20,000 | $ 74,200 | $ 79,000 |
| David Arkowitz | 20,000 | $ 4,800 | 20,000 | $ 74,200 | $ 79,000 |
| Todd Brady, M.D., Ph.D. | 20,000 | $ 4,800 | 20,000 | $ 74,200 | $ 79,000 |
| Pamela Klein, M.D. | 20,000 | $ 4,800 | 20,000 | $ 74,200 | $ 79,000 |
| Edward Benz Jr., M.D. | 23,937 | $ 4,800 | 20,000 | $ 74,200 | $ 79,000 |
| Geoffrey Race | 23,937 | $ 27,681 | 20,000 | $ 74,200 | $ 101,881 |

| Name | Number of Unvested RSUs | Value of Unvested RSUs |
|---|---|---|
| **Executive Officers** | | |
| Eliot Forster, Ph.D. (1) | 85,793 | $ 610,846 |
| Darlene Deptula-Hicks (1) | 30,241 | $ 215,316 |
| Louis Kayitalire, M.D. (1) | 29,638 | $ 211,023 |
| Neil Brewis, Ph.D., DSc. | 10,875 | $ 77,430 |
| **Non-Employee Directors** | | |
| Nessan Bermingham, Ph.D. | 7,733 | $ 55,059 |
| David Arkowitz | — | $ — |
| Todd Brady, M.D., Ph.D. | — | $ — |
| Pamela Klein, M.D. | — | $ — |
| Edward Benz Jr., M.D. | — | $ — |
| Geoffrey Race | — | $ |

37. In addition, certain employment agreements with certain F-Star executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

| Name [1] | Closing and Retention Bonus, and Buyer Equity [2][3][4] | Notice Pay and Pro Rata Bonus [5] | Cash Severance [6] | ProRated Annual Bonus [6] | Perquisites and Benefits [6] | Equity [7] | Total |
|---|---|---|---|---|---|---|---|
| Eliot Forster, Ph.D. | — | $ 458,157 | $ 610,875 | $ 305,438 | — | $ 2,255,155 | $ 3,629,625 |
| Darlene Deptula-Hicks | — | — | $ 134,630 | $ 221,513 | — | $ 453,180 | $ 809,323 |
| Louis Kayitalire, M.D. | — | — | $ 436,652 | $ 116,280 | $ 49,298 | $ 472,780 | $ 1,075,010 |
| Neil Brewis, Ph.D., DSc. | $ 1,561,683 | — | $ 518,600 | — | — | $ 974,866 | $ 3,055,149 |

38. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of F-Star, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Recommendation Statement*

40. On July 7, 2022, the F-Star Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*

*to the Proposed Transaction*

41. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

   a. Adequate information as to whether a committee of disinterested directors was appointed to lead the sales process and if so, the powers to which they were authorized in reference to any proposed transaction;

   b. Whether the terms of any confidentiality agreements entered during the sales process between F-Star on the one hand, and any other third party (including InvoX), if any, on the other hand, differed from one another, and if so, in what way;

   c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including InvoX) throughout the sales process, if any, would fall away; and

   d. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning F-Star's Financial Projections*

42. The Recommendation Statement fails to provide material information concerning financial projections for F-Star provided by F-Star management and relied upon by Morgan

Stanley in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Morgan Stanley notes that it reviewed, "certain internal financial statements and other financial and operating data concerning the Company."

44. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that F-Star management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

45. With regard to *December 2021 Projections* for F-Star prepared by F-Star management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in Morgan Stanley analyses:

> a. The Recommendation Statement fails to provide the underlying inputs, metrics, and assumptions used to calculate Operating Income for years 2022E-2040E, including specifically, the impact of stock based compensation.
>
> b. The Recommendation Statement fails to provide a definition for Unlevered Free Cash Flow.

46. With regard to *June 2022 Projections* for F-Star prepared by F-Star management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in Morgan Stanley analyses:

c. The Recommendation Statement fails to provide a definition for Unlevered Free Cash Flow.

47. The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. The Recommendation Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the alternative cases of projections rely.

49. This information is necessary to provide Plaintiff i—n his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Morgan Stanley's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

51. In the Recommendation Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Discounted Cash Flow Analysis*, the Recommendation

Statement fails to disclose the following:

    a. The specific inputs and assumptions used to determine a perpetuity growth rate of negative 5%;

    b. The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow;

    c. The specific inputs and assumptions used to determine discount rates ranging between 12.2% and 14.2%;

    d. The weighted average cost of capital for the Company;

    e. The assumed tax rate for the Company;

    f. The beta for the Company;

    g. The specific metrics for United States markets generally used to calculate the weighted average cost of capital for the Company;

    h. The range of implied aggregate values of the Company calculated;

    i. The present values of unlevered free cash flows for the Company;

    j. The terminal value for the Company; and

    k. The Company's cost of equity;

53. With respect to the *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

    a. The exact value of each transaction compared; and

    b. The underlying inputs, metrics, and assumptions used to select representative ranges of premiums of 75% to 150% and 30% to 50%.

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

55.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public F-Star stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

## Violations of Section 14(e) of the Exchange Act

## (Against All Defendants)

56.     Plaintiff repeats all previous allegations as if set forth in full herein.

57.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

58.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

59.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

62.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

63.     Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Individual Defendants)

64.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

65.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

66.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

67.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

68. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

69. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

70. Plaintiff has no adequate remedy at law.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

71. Plaintiff repeats all previous allegations as if set forth in full herein.

72. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

73. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of F-star's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

75. The Individual Defendants acted as controlling persons of F-star within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause F-star to engage in the wrongful conduct complained of herein. The Individual Defendants controlled F-star and all of its employees. As alleged above, F-star is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 12, 2022	**BRODSKY & SMITH**

By: */s/ Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*